**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**GLENN DAMOND**

**VERSUS**

**THOMAS W. REEDY, ET AL.**

**CIVIL ACTION**

**NO. 18-647-SDD-EWD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 24, 2018.

_____
**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**GLENN DAMOND**

**VERSUS**

**THOMAS W. REEDY, ET AL.**

**CIVIL ACTION**

**NO. 18-647-SDD-EWD**

## REPORT AND RECOMMENDATION

Plaintiff, Glenn Damond ("Plaintiff"), proceeding *pro se*, filed a complaint on June 22, 2018.[1] On July 5, 2018, and following an order granting Plaintiff leave to proceed *in forma pauperis* ("IFP"),[2] a hearing was held in this matter pursuant to *Spears v. McCotter*,[3] during which Plaintiff explained the bases for his claims. Following the hearing, Plaintiff submitted additional memoranda supporting his claims,[4] as well as an Amended Claim.[5] For the reasons set forth herein, the undersigned RECOMMENDS that Plaintiff's suit be DISMISSED with prejudice.

**I.    Background**

Plaintiff's initial Complaint,[6] as well as his Amended Claim,[7] focus on Plaintiff's purchase of two vehicles in 2014 pursuant to two retail installment contracts (the "Installment Contracts").

---

[1] R. Doc. 1. Plaintiff disagrees with the characterization of his filing as a "complaint" and instead insists that he has filed a "claim." *See*, R. Doc. 7. Plaintiff further contends, *inter alia*, that he should be considered a "claimant" instead of a "plaintiff," that he is proceeding "in proper person" rather than "*pro se*," and that the record should be changed to reflect he is proceeding in "the judiciary district court of united states not the UNITED STATES DISTRICT COURT." R. Doc. 7. The undersigned previously denied Plaintiff's motion to "correct" the record with respect to these issues. R. Doc. 8.

[2] R. Doc. 4.

[3] 766 F.2d 179 (5th Cir. 1985).

[4] R. Doc. 11 & 13.

[5] R. Doc. 18.

[6] R. Doc. 1. The undersigned has also considered the various documents attached to Plaintiff's original Complaint. The Fifth Circuit has explained that when considering a plaintiff proceeding *pro se*, the court should examine the complaint "including attachments." *Clark v. Huntleigh Corp.*, 2005 WL 79111, at * 1, 119 Fed. Appx. 666 (5th Cir. Jan. 12 2005).

[7] R. Doc. 18.

1

Plaintiff contends that although he entered into the Installment Contracts,[8] the Installment Contracts were illegally "securitized" without his knowledge. In addition to generally arguing that securitization (which Plaintiff defines as "the practice of pooling together various types of <u>debt</u> instruments (assets) such as <u>mortgages</u> and other <u>consumer loans</u> and selling them as <u>bonds</u> to investors")[9] is illegal, Plaintiff specifically asserts that he was fraudulently induced into entered the Installment Contracts because he did not know that the Contracts would be "monetized,"[10] and that defendants improperly changed his name when defendants listed his name on the Installment Contracts in all capital letters rather than with only the beginning letter capitalized.[11]

During the July 5, 2018 hearing, Plaintiff provided a Memorandum of Law setting forth the authority on which he relies for his position that defendants engaged in illegal securitization with respect to the two Installment Contracts.[12] Thereafter, Plaintiff filed a New Memorandum of

---

[8] During the July 5, 2018 hearing, Plaintiff confirmed that he entered into the Installment Contracts, that he did not pay the total price for either vehicle at the time of purchase (instead, he was to make installment payments), and that he still owes money for each vehicle.

[9] R. Doc. 13, p. 6. To the extent Plaintiff complains that he was unaware that his purchase of the two vehicles resulted in a security interest, both Installment Contracts provide that "You give us a security interest in the Vehicle, any proceeds received for the Vehicle, and any accessories, equipment, and replacement parts installed on the Vehicle. You also give us a security interest in any insurance, service, or other contracts we finance for you and all proceeds from any insurance, service, or other contracts on the Vehicle, including refunds of premiums or charges from the contracts we finance for you. The security interest you are giving us secures all amounts owned by you under this Contract and all the other agreements you have made in this Contract." R. Doc. 1-1, pp. 3 & 11. *See*, R. Doc. 13, p. 6 ("The defendants presented Claimant with investment agreements by disguising the loan agreements as such. The Claimant's signature in connection with both investment instruments were used to create a security that is currently on the stock market. Defendant's [sic] monetized both instruments."). Moreover, although the Installment Contracts do not explicitly state they may be pooled, both Installment Contract contemplate possible transfers with the Plaintiff making payment to the subsequent holder of the Installment Contract. R. Doc. 1-1, pp. 2 & 10.

[10] R. Doc. 13, p. 3 ("If Claimant would have known the document was going to be monetized, he would have never agreed to it nor put money down nor made payments monthly. Because he would have knew [sic] that it was an investment contract that would make millions as he recently discovered."). Per Plaintiff's Amended Claim, he asserts that "Defendants did not inform the Claimant that the instruments were more than vehicle contracts," "nor did defendants revealed [sic] to claimant that the instruments would be monetized without his permission." R. Doc. 18, ¶¶ 17 & 18.

[11] *See*, R. Doc. 18, ¶ 16 ("Claimant's name was converted on the documents from Glenn Damond, the living man to GLENN DAMOND, a legal fiction…."). During the July 5, 2018 hearing, the undersigned explained to Plaintiff that she did not consider such capitalization to be a change of his name.

[12] R. Doc. 11.

Law,[13] as well as an "Amended Claim."[14] Per Plaintiff's Amended Claim, Plaintiff seeks monetary damages for fraud and allegedly illegal securitization of the Installment Contracts, and asserts violations of the United States Constitution, Louisiana state law, the Federal Trade Commission Act (the "FTCA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the Lanham Act.[15] Plaintiff asks this Court to "reverse" the Installment Contracts, "audit the defendants for tax evasion," order a forfeiture of "all assets accumulated by each of the listed defendants," and award compensatory and punitive damages as well as court costs.[16]

## II. Law and Analysis

### A. This Court Has Federal Question Subject Matter Jurisdiction

Although Plaintiff asserts in his Amended Claim that this Court has jurisdiction pursuant to 28 U.S.C. § 1332, Plaintiff does not adequately allege the citizenship of any of the defendants.[17] However, because Plaintiff's Amended Claim asserts violations of various federal statutes and Constitutional provisions, this Court has original subject matter jurisdiction pursuant to 28 U.S.C.

---

[13] R. Doc. 13.

[14] R. Doc. 18.

[15] R. Doc. 18.

[16] R. Doc. 18, p, 4. With respect to compensatory damages, Plaintiff contends he is entitled to "1% of each securitized bond," $10.5 million dollars from each defendant for "emotional pain and mental anguish," and $7.5 million from each defendant "for Tradename infringement of Claimant's owned name and signature." With respect to punitive damages, Plaintiff asks the Court to order each defendant to separately pay him $8.5 million dollars.

[17] R. Doc. 18, p. 2. Per the Amended Claim, Plaintiff alleges that "CarMax, Inc., is the headquarters and principal of CarMax Business Services and is located in Richmond Virginia," "CarMax Business Services, is a foreign limited Liability Company that operates out of Kennesaw Georgia…," and that "Thomas W. Reedy (Tom Reedy) is the CHIEF FINANCIAL OFFICER & EVP of CarMax operations…." R. Doc. 18, p. 1, ¶¶ 2-4. To allege the citizenship of a corporation, Plaintiff must allege the corporation's principal place of business and state of incorporation. *See*, *Getty Oil, Div. of Texaco v. Ins. Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988) (In diversity cases involving corporations, "allegations of citizenship must set forth the state of incorporation as well as the principal place of business of each corporation."). To adequately allege the citizenship of a limited liability company, Plaintiff must identify each of the members of the limited liability company and the citizenship of each member in accordance with the requirements of § 1332(a) and (c). *See*, *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). An individual's citizenship must be based on domicile. *See*, *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) ("For diversity purposes, citizenship means domicile, mere residence in the State is not sufficient.").

3

§ 1331 and may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

### B. Standard for Dismissal Under 28 U.S.C. § 1915

On June 25, 2018, Plaintiff was granted leave to proceed IFP.[18] Pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B), this Court is authorized to dismiss an action brought *in forma pauperis* if satisfied that the action is frivolous or malicious.[19] An *in forma pauperis* suit is properly dismissed as frivolous if the claim lacks an arguable basis in either fact or in law.[20] A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory."[21] The Fifth Circuit has stated three standards which a district court may use to determine whether a claim is frivolous. "The first requires a determination of whether the IFP complaint has a realistic chance of ultimate success. The second requires that the complaint have 'arguable merit ... in terms of the arguable substance of the claim presented, both in law and in fact.' The third prohibits dismissal 'unless the court is satisfied 'beyond doubt' that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[22] "Similarly, a court may dismiss *sua sponte* an *in forma pauperis* complaint which, while not technically frivolous, fails to state a claim upon which relief can be granted under either 28 U.S.C. § 1915(e)(2)(B) or Fed. R. Civ. P. 12(b)(6)."[23] "In making a determination as to whether an *in forma pauperis* complaint is frivolous

---

[18] R. Doc. 4.

[19] *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

[20] *Denton v. Hernandez*, 504 U.S. 25, 31 (1992), *citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995).

[21] *Neitzke*, 490 U.S. at 327.

[22] *Green*, 788 F.2d at 1120 (internal citations omitted).

[23] *Thibeaux v. Psychiatrist*, Civil Action No. 18-314, 2018 WL 1734632, at * 3 (M.D. La. March 29, 2018) (citing *Hamilton v. Trail*, Civ. A. No. 1:09-CV-496, 2011 WL 2971223, at *2 (E.D. Tex. June 14, 2011), report and recommendation adopted, 2011 WL 2970842 (E.D. Tex. July 21, 2011).

or fails to state a claim, a court must construe the allegations of the *pro se* litigants liberally.  Such litigants are held to less stringent standards than formal pleadings drafted by lawyers."[24]

### C.  Plaintiff Has Failed to State a Claim

First, and as explained to Plaintiff during the July 5, 2018 hearing, the undersigned does not agree that the capitalization of Plaintiff's name in the Installment Contracts in any way affects the validity of those Contracts.  The capitalization of every letter in Plaintiff's name (as opposed to capitalization of only the initial letter) "is a mere change of case with absolutely no auditory significance" and does nothing other than "to perhaps offend [Plaintiff's] aesthetic preferences."[25]  Plaintiff confirmed during the July 5, 2018 hearing that he entered into the Installment Contracts, and asserts in various affidavits attached to his pleadings as well as in his pleadings themselves that he signed the Installment Contracts.[26]  To the extent that Plaintiff argues that the registration of his name in all capital letters with the Louisiana Secretary of State as a trade name precludes use of the "all-caps" version of his name in the Installment Contracts, the undersigned notes that such registration was recorded on September 25, 2016.[27]  Even assuming *arguendo* that such

---

[24] *Id*. (citing *Haines v. Kerner*, 404 U.S. 519 (1972))

[25] *U.S. v. Furman*, 168 F.Supp.2d 609, 614 (E.D. La. 2001) (finding that incorrectly spelled and arguably improperly capitalized name in superseding indictment had no affect where variation could not have prejudiced defendant "in any way other than to perhaps offend his aesthetic preferences."). *See also*, *Thibodeau v. U.S.*, 361 F.2d 443, 444 (5th Cir. 1966) ("A name need not be correctly spelled in an indictment, if substantially the same sound is preserved."). Although the undersigned recognizes that *Furman* and *Thibodeau* arose in the context of criminal proceedings, analogous to both cases, there is no confusion here regarding whether Plaintiff is the person who entered into the Installment Contracts.

[26] R. Doc. 1, ¶ 6 ("July 3, 2014 and September 26, 2014, Claimant, Glenn Damond signed 2 retail installment contracts with CarMax auto Superstore Inc. in Baton Rouge Louisiana."); R. Doc. 18, ¶ 6 (same); R. Doc. 1-1, p. 18 (May 22, 2017 affidavit wherein Plaintiff stated "affiant signed 2 contracts for vehicles prepared by CarMax auto financing…on July 3 and September 26, 2014."); R. Doc. 1-1, p. 24 (same assertion in September 5, 2017 affidavit).

[27] *See*, R. Doc. 1-1, p. 64.

registration properly conferred Plaintiff rights in a trade name,[28] Plaintiff signed the Installment Contracts in 2014, well before the registration of the trade name.[29]

Second, although Plaintiff has provided lengthy memoranda purporting to support his claims, he has failed to provide any persuasive authority for his position that "securitization" is illegal. Courts considering similar arguments have uniformly rejected the position that securitization is illegal or requires notice to the debtor.[30] All of Plaintiff's specifically asserted causes of action are premised on Plaintiff's position that securitization is illegal. Because the undersigned finds that Plaintiff has failed to establish (and the undersigned's independent research

---

[28] Plaintiff attaches a registration for the trade name "GLENN DAMOND" which was filed with the Louisiana Secretary of State. R. Doc. 1-1, p. 64. Under Louisiana law, the term "trade name" "means a word, name, symbol, device or any combination thereof used by a person to identify his business, vocation or occupation and distinguish it from the business, vocation or occupation of others." La. R.S. § 51:211(D). Similarly, the Lanham Act, 15 U.S.C. § 1127, defines a "trade name" to be "any name used by a person to identify his or her business or vocation." Nothing in Plaintiff's voluminous submissions indicates that Plaintiff is using an all capitalized version of his name as a trade name to identify a business. In his application to register a trade name, Plaintiff listed "person" in response to the question of the "type of business or list of goods or services to which the trade name, trademark, or service mark is applied." R. Doc. 66.

[29] R. Doc. 1-1, pp. 2-5; 10-13.

[30] *See*, *Warren v. Bank of America, N.A.*, Civil Action No. 11-3603, 2012 WL 3020075, at * 6 (N.D. Tex. June 19, 2012) ("neither Plaintiff's pleadings nor his brief even allude to any legal authority in support of this theory that the securitization of the debt rendered the note and accompanying deed of trust unenforceable and discharged his obligations under the note and deed of trust. Several courts that have considered the theory have found it without merit or any legal basis.") (collecting cases); *Lariviere v. Bank of New York*, Civil Action 9-515, 2010 WL 2399583, at * 4 (D. Me. May 7, 2010) ("Many people in this country are dissatisfied and upset by [the process of securitizing subprime mortgages], but that does not mean that the [plaintiffs] have stated legally cognizable claims…."); *Wittenberg v. First Independent Mortg. Co.*, Civil Action 10-58, 2011 WL 1357483, at * 8 (N.D. W. Va. April 11, 2011) ("the plaintiff has failed to cite a single case, and this Court's independent research was unable to discover one, which stands for the proposition that securitization is unlawful. In fact, this Court has found only cases in which district courts have rejected claims based upon securitization, finding that the practice is lawful.") (collecting cases); *Velez v. The Bank of New York Mellon*, Civil Action No. 10-468, 2011 WL 572523, at * 4 (D. Hi. Feb. 15, 2011) ("The court also rejects Plaintiff's contention that securitization in general somehow gives rise to a cause of action—Plaintiff points to no law or provision in the mortgage preventing this practice, and otherwise cites no law supporting that securitization can be the basis of a cause of action. Indeed, courts have uniformly rejected that securitization of a mortgage loan provides the mortgagor a cause of action.") (collecting cases); *Saniel v. Mortgage Electronic Registration Systems, Inc.*, No. 2:10-cv-1497, 2011 WL 778206, at * 4 (D. Nev. March 1, 2011) (dismissing plaintiff's claim of civil conspiracy based on allegation that defendants committed fraud by not disclosing the securitization of a loan and stating that "securitization is not illegal. Even if Defendants securitized the Loan, none of the Defendants were under any legal obligation to notify [plaintiff] of this lawful action."); *White v. Citimortgage, Inc.*, 1:12-cv-2035, 2012 WL 13018321, at * 5 (N.D. Ga. Dec. 18, 2012) ("And '[s]ecurization and nondisclosure of securitization of a loan are not illegal acts.'") (quoting *Saniel*, 2011 WL 778206 at * 2).

6

has not revealed) any viable basis for the premise that securitization is illegal, the undersigned finds Plaintiff has failed to state a claim.[31]

Finally, and setting aside the question of whether securitization is illegal, the undersigned finds that for other reasons, many of Plaintiff's claims have no arguable merit in law. Although Plaintiff alleges various Constitutional violations,[32] Plaintiff's nebulous assertions that Congress failed to create "sufficiently specific" or uniform laws with respect to securitization is insufficient to allege state action,[33] and "[t]here is nothing unconstitutional" about securitizing a loan or failing to inform Plaintiff about the securitization process.[34] Although Plaintiff's Amended Claim includes various references to fraud, under Louisiana law, "[t]he essential elements of a fraud claim are the intent to defraud or gain an unfair advantage, actual or potential loss or damage, and

---

[31] The fact that securitization has consistently been held to be a legal act is also relevant to Plaintiff's RICO claim. As this court recently explained, "[c]ivil RICO claims have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *K&F Restaurant Holdings, Ltd. v. Rouse*, Civil Action No. 16-293, 2018 WL 3553422, at * 17 (M.D. La. July 24, 2018) (quoting *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 523–24 (5th Cir. 2016) (quoting *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007)). "'A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity.'" *Id*. "The predicate criminal acts can be violations of either state or federal law." *Id*. Plaintiff has not provided a basis for this Court to find the securitization was an illegal, much less criminal, act.

[32] In his Amended Claim, Plaintiff asserts that the defendants' use of his signature to create securities violated Article 1, Section 10 of the US Constitution. R. Doc. 18, ¶ 31. It appears that Plaintiff seeks to assert a violation of the Constitution's "Contracts Clause," ("No state shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility."). Plaintiff further asserts that "still wanting to collect from claimant after monetizing the instruments, is inhuman, represents debt bondage as listed by the UN supplementary convention 1956 as modern day slavery, in violation of 13 amendment of Constitution for America 1865." R. Doc. 18, ¶ 33. In his most recent Memorandum of Law, Plaintiff additionally argues that securitization is an unconstitutional violation of the commerce clause, R. Doc. 13, pp. 10-11, free speech protections, R. Doc. 13, pp. 11-13, the "right-to-contract clause," R. Doc. 13, pp. 13-14, the equal protection clause, R. Doc. 13, p. 14, and the separation of powers doctrine, R. Doc. 13, pp. 14-15.

[33] *See*, *e.g.*, *Bodmann v. JPMorgan Chase Bank, N.A.*, No. 14-cv-833, 2014 WL 3058551, at * 4 (E.D.N.Y. July 7, 2014) (granting motion to dismiss plaintiffs' constitutional claims and explaining that "[p]laintiffs have failed entirely to allege any conduct of either JPMC or SunTrust that could be considered state action. Although plaintiffs are correct that private actors may, in certain circumstances, be considered state actors, they allege no facts supporting such a conclusion in this case. Specifically, defendants' participation in the securitization of plaintiffs' mortgage loan does not constitute state action.").

[34] *Bodmann*, 2014 WL 3058551, at * 4.

7

an element that courts have labeled 'reliance, inducement or causation.'"[35] Here, Plaintiff has provided no arguable basis for this Court to find that Plaintiff was damaged by securitization of the Installment Contracts.[36] With respect to Plaintiff's claims asserted under the FTCA, "[t]he Federal Trade Commission Act (FTC Act) does not provide for private causes of action."[37] Finally, while Plaintiff contends that defendants are "making a profit off of and still is [sic] profiting off of Claimant's commercially own [sic] Trade name entity, in violation of the Lanham Trademark Act," as explained above, Plaintiff's registration of his name in all capital letters occurred in 2016, and the execution of the Installment Contracts predated such registration by two years.[38]

---

[35] *In re Discount Cigarette, Cigars, Etc., Inc.*, 399 B.R. 605, 617 (M.D. La. 2009) (citing *Sun Drilling Products Corp. v. Rayborn*, 798 So. 2d 1141, 1152-53 (La. App. 4 Cir. 2001)).

[36] Plaintiff does not allege that defendants repossessed the vehicles or even that he has failed to make monthly installment payments. Instead, Plaintiff complains that defendants are "requiring claimant to pay monthly notes and the full price of vehicles" while at the same time using the loans "for the investment instruments, to later be sold to make millions of dollars." R. Doc. 18, ¶¶ 21-22. In the context of mortgage loans, even where foreclosure proceedings *have* been instituted, courts have found undisclosed securitization of the mortgage did not lead to the plaintiff's damage. As explained by one court, "'[s]ecuritization merely creates a separate contract, distinct from [p]laintiffs['] debt obligations under the note and does not change the relationship of the parties in any way.'" *Boone v. Deutsche Bank National Trust Co.*, No. 2:16-cv-1293, 2017 WL 117966, at * 6 (E.D. Cal. Jan. 12, 2017) (quoting *Reyes v. GMAC Mortgage LLC*, 2011 WL 1322775, at *3 (D. Nev. Apr. 5, 2011) (internal quotation marks omitted)). "Therefore, the parties' rights and obligations regarding the mortgage loan on the subject property were not impacted in any manner by the fact that loan was securitized, or by the terms of any separate agreement underlying that securitization. The mere fact that [defendant] allegedly concealed the information concerning securitization of the loan could not have caused the damages plaintiffs allege, which are based on that defendant's alleged actions in seeking to foreclose on the loan." *Id.*

[37] *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 176 (5th Cir. 2016). *See also*, *Norman v. Torch, Inc.*, Civ. A. No. 91-3738, 1993 WL 149658, at * 2 (E.D. La. May 4, 1993) ("the FTCA does not provide a private right of action.") (citing *Fulton v. Hecht*, 580 F.2d 1242, 1249 (5th Cir. 1978) ("there is no private cause of action for violation of the FTC Act.")); *Brill v. Catfish Shaks of America, Inc.*, 727 F.Supp. 1035, 1041 (E.D. La. 1989) ("there is no private right of action for violation of the FTC's franchise disclosure rules.").

[38] Further, although Plaintiff cites 15 U.S.C. § 1125 of the Lanham Act, which prohibits use of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person," Plaintiff has not explained how use of his name in all capital letters is likely to cause confusion or to deceive. As noted above, Plaintiff has clearly and repeatedly asserted that he signed the Installment Contracts.

8

**III.    Conclusion**

Accordingly, for the reasons set forth herein, the undersigned finds that Plaintiff has failed to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and therefore RECOMMENDS that Plaintiff's suit be dismissed with prejudice.

IT IS HEREBY ORDERED that a copy of this Report and Recommendation shall be sent to Plaintiff by certified mail, return receipt requested to the address listed on PACER.

Signed in Baton Rouge, Louisiana, on September 24, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**